at all? Thank you so much. Whenever you're ready. May it please the Court, John Norensberg on behalf of Plaintiff Appellant Karina Sigalovskaya. Your Honors, Plaintiff Viven's claims should not have been dismissed. The Court erred when it found that Plaintiff's claims presented a new Bivens context. This was based on an overly expansive reading of the Supreme Court's holding in Ebert v. Buell. And just at the outset, I wanted to clarify that Ebert did not change the law on new context. In fact, it is not a new context decision. The Supreme Court actually said in that decision that the Ninth Circuit had conceded that it was a new context. Therefore, the Supreme Court was not called upon to decide, nor did it decide, the issue of new context. Its entire focus in that decision was based on the special factors analysis, Part 2. So the law as it existed before Ebert on new context was the same as after. Nothing had changed in terms of the new context inquiry. And yet, the district court, prior to this ruling in Ebert, had ruled that Plaintiff's claims were sufficient, that they were viable under Bivens, and the case was actually set to go to trial. We were just five days away from trial. We had oral argument on this issue. The Court actually noted in denying summary judgment that defendants could not argue credibly that there was Let me just ask you, accepting your assertion that Egbert Ebert didn't change anything, why isn't this a new context? Well, because the courts have made clear, in terms of what constitutes a new context, I believe we need to have a more pragmatic approach, which is something that our sister circuits, the court's sister circuits, have acknowledged in the Fourth Circuit and the Seventh Circuit, a pragmatic approach, which is, is it different factually? Yes, it may be, but the real critical question is, is it meaningfully different? What constitutes a meaningful difference? And the courts in those circuits, in the Fourth and Seventh Circuit, have said to answer that question, you have to focus on whether or not there is actually a question implicating separation of powers. Is there a question, by recognizing the Vivian's right, that that would somehow incur or encroach upon the powers of the legislature or the powers of the executive branch? And why isn't that the case here? Well, because this is a traditional run-of-the-mill Fourth Amendment violation. I mean, we alleged in great detail in the complaint about the fact there was an unlawful search and seizure. Well, your counsel, your colleagues on the other side will say that the argument is actually about the fabrication of evidence, and that is at the heart here, and that that's what distinguishes it from a Vivian's claim. Do you have a response? Yes, because I think we're in the context of a 12C motion. We're looking at the sufficiency of the pleadings. In that context, there are multiple, repeated, detailed claims about Fourth Amendment violations that precede the falsification of evidence. And even if one were to accept that the latter reference and the part of the complaint that talks about a falsified confession somehow presents a new context, the question would be, how does that – how does that meaningfully change – how is it meaningfully different in the original Vivian's claim? And it's not, because it's not an intrusion on the executive branch. It's not an intrusion on the legislative branch. It is simply a variation in facts. And in the Seventh Circuit and Fourth Circuit cases, they had markedly different facts than Vivian's. But the courts came back to the ultimate question, were those different facts really in any way driving this into a separation of powers motion? How does that analysis – and that might work on the new context – but how – does that analysis have any weight in the special factors part of the analysis we have to undertake? Well, Your Honor, if we were to say in the new – if this is not a new context, we wouldn't get to that second part of the special factors. But assuming, for the purposes of Your Honor's question, that there is a new context, the special factors analysis really does not come into play for the facts on this case. If you look at the Supreme Court's precedents, the main precedents that we're talking about, Egbert, Hernandez, and Abbasi, all of them involved national security interests. But you concede that at least Egbert stands for the proposition that if there are any alternative remedies, then you don't have a violent claim. Is that right? Or would you say that I'm over-reading or misreading that premise? In looking at the language last night in preparation for this argument, I think it really is more limited than that, Your Honor. I mean, it's – Can you explain to me why I'm wrong? That context, it's basically on those specific facts dealing with a Customs Border Patrol agent who availed himself of a remedy and had a one-year investigation on, you know, on his behalf conducted relating to these same claims, the Court found that that basically foreclosed the remedy as it – foreclosed the Bivens remedy on an independent basis. But it's clearly in that context. It must be done on a case-by-case basis. And there are no national securities concerns here. There are no separation of powers concerns. But that doesn't say – the question I asked was whether or not you think we should be reading Egbert as foreclosing a remedy – or foreclosing a Bivens action if there's an alternative remedy. I don't think so, Your Honor. I think that's a – you know, I understand some courts might take that view. I think it's overly expansive when you actually look at what the Court did and what it didn't do. Well, Justice Sotomayor took that view. What? I'm sorry. Justice Sotomayor took that view, right? And you disagree with her that this case is the blowing taps over Bivens. I do disagree with it because I think when you look at what it did do and what it didn't do, I mean, certainly it's not a new context case. I mean, that – I think when you look at it closely, the Court said nothing about new context. So by definition, it's not getting rid of Bivens. But more importantly, to answer Your Honor's question, the Court – the Supreme Court has had multiple opportunities, 12 opportunities in all, to deal with Bivens and to overturn Bivens. And we know from recent history the Court's not shy about it. If they want to overturn a longstanding decision, they'll do it without any reservation. So the fact they have never done it, and even in Abbasi, the Court recognized and went out of its way to point out, we're not getting rid of Bivens. We recognize the continued force and even the necessity of having Bivens in a context of a Fourth Amendment search and seizure. And so that is still viable after Egbert. And you're saying that there's essentially no distinction between a false arrest case in which the police arrest with they have a fact or another fact that gives them a hunch and the Court decides there's no probable cause, and a case in which they make up probable cause and present it to a judge and, you know, were to get a warrant, for example. I don't think there's a meaningful difference in terms of the incursions on the other branches. This is just worse behavior. It's not different behavior to arrest someone without probable cause by making something up as compared to arrest without probable cause when you don't bother making anything up and you just present facts that are not sufficient. Exactly. And look, if we were to just, you know, remove the fabricated evidence part of this claim, that pleading as it stands would stand as a detailed recitation of multiple Fourth Amendment violations leading up to that moment. There would be no question that's a viable claim under Bivens. Now, what does this do to the malicious prosecution claim? Are you giving that one up because you were not because you didn't argue it explicitly, but just because in answer to questions you suggested that we don't have to reach the balancing, whatever we're going to call it, second step of the inquiry in this case. But we would, wouldn't we, if we were to look at the malicious prosecution branch because that claim does seem to be a different context that pushes at least a little deeper into executive branch prosecutorial decisions and behavior that influences those. Would you agree with that? Yes. I would agree, Your Honor, and we do concede that the malicious prosecution claim does present a new context. I mean, we did concede in the brief and we do concede here as well. However, one of the other factors— But you're not giving up the claim because you think that you win on the second step of Bivens with respect to malicious prosecution. Yes. And particularly, this Court for almost three decades has recognized, fabricated evidence, has a long history of jurisprudence on this area. This Court is better equipped than any of the other branches to deal with this. There's no way we could say that Congress could deal with this issue that's been adjudicated so thoroughly, starting with Ricciuti all the way through this Court's decision in Key and 27 years or so in between. This Court is more than well equipped for that, and that's part of the calculus on special factors as well. So that militates strongly in favor of saying this claim should be allowed. It's not an incursion on Congress or the executive branch, because this Court has that level of experience and expertise on those types of cases. All right. All right. Thank you, Mr. Norensberg. I think we have your argument. You have some rebuttal time. Good morning, Your Honor. I'm Assistant United States Attorney Dara Olds on behalf of the appellees. In this case, the district court did properly find that plaintiffs' Bivens claims arise in a new context and that they are asserted against a new category of defendants and that the claims asserted are a different type of claim. They are different in a meaningful way. Is it new defendants because it's a different agency, or is it new, so it's the label that they, what they wear on their back that says Department of Homeland Security rather than Drug Enforcement Administration? Well, as well as the mandate under which they operate is different than Federal Bureau of Narcotics. How is that? How is that a different, because this is about child pornography rather than about narcotics? Because this is, these are agents that are Homeland Security Investigations agents and that they work on cases involving human trafficking, transnational issues concerning the exploitation of children, and so that is different. It's more akin to what was happening in the Egbert case than in Bivens. Is that because these people are Russian? No, it doesn't have anything to do with the... Well, then where is the transnational piece of this? It's just, it's not so much in this specific case. It's in the type of cases... Why is that not what we're talking about here? If a, if a, you know, police officer wears, is assigned to the intelligence collection unit rather than patrol, and in the course of doing that he goes out and kicks down a door without any warrant or without any probable cause and drags the person out and arrests them with no probable cause, that's completely different than Bivens because the officer was assigned to a unit that has some different responsibilities? Well, in Egbert, there was an excessive force claim just like in Bivens. It was on a person's property just like it was in Bivens, but the court found that the real question was whether the judiciary should be recognizing that damage is remedied... But that was at the second step, right? The court did not discuss the first step. Well, we take a different view of Egbert, Your Honor. As Justice Perez mentioned earlier, the district, the Supreme Court in Egbert does discuss both what is a new context as well as special factors, and in fact... Where does it say that this is a new context other than in saying that the Ninth Circuit acknowledged that it's a new context? It says, Your Honor, that the two steps, the question as to whether it's a new context and the question... Will often collapse. Correct. It often collapses. It will often collapse. How do we tell when is often and when is not? When is the infrequent not collapsing? Isn't that by examining whether it is or is not a new context? Well, one of the ways that the court did it in Egbert was look to whether there is an alternative remedial structure and said that... That's all the second step. Well, actually, they said that when there is an alternative remedial structure, there cannot be a Bivens claim. And the reason for that is because the executive has already put into place something that deters those agents from constitutional violations. And this is the same remedial structure in place here that there was in  Was it the case of the Federal Bureau of Narcotics that their agents were authorized by the executive branch to operate as rogues in violation of the Constitution with no possibility of internal discipline if they violated the Constitution? Well, in time of Bivens, the court thought that it was appropriate to find a remedy to imply a remedy that didn't exist within the Constitution, which in Egbert said the court doesn't do anymore. And for that reason, because of the separation of powers issues, Egbert has certainly cabined, restricted remedies that are available under Bivens. Would you be making the same argument if the agents were with the Drug Enforcement Administration? I'm not sure that we would have that argument. The successor of the Federal Bureau of Narcotics? I'm not sure we would have that argument. But I think for us in this case, because it is a completely different agency... Would you be making the same argument if these agents were part of a joint task force with the NYPD and there were NYPD officers involved in this at the same time as they were, and the NYPD officers were subject to suit under Section 1983, but the federal officers could go scot-free from civil liability? Well, fairly, Your Honor, I'm not sure if that would apply under those circumstances. I mean, isn't that one of the things that was critical to the reasoning of Bivens, that in these circumstances, it would be highly anomalous to have a situation where officers doing the same work were subject to different regimes with respect to their liability for essentially the same actions? The problem that the Supreme Court had with that view in Egbert, even though, again, it's a false arrest claim, I'm sorry, it's an excessive force claim, Fourth Amendment arising under the Fourth Amendment on someone's property, is that it's not enough to just be similar to Bivens. That's not enough to have a claim under Bivens at this point. Isn't your argument, effectively, there can never be a false arrest claim? Because, I mean, we know the Federal Bureau of Narcotics Agents, they don't exist anymore, and you're not parsing the line for us in any material way. So, I mean, is that what you're not saying? I don't think that the Court needs to reach that, and I think, actually, in our brief, we cite in footnote 10 a case, Sheik v. United States, which was at that time in the District Court, but the Ninth Circuit has since found that claims of fabrication of evidence leading to false arrest against HSI agents was both a new, it was a new context, a new category of claim against a new category of defendants, and in that way, the Ninth Circuit distinguished it from Bivens. There's never been a fabrication of evidence claim recognized by the Supreme Court, and the District Court correctly found that that was really the crux of this claim. Why do you think, I mean, why do you think that fabricating evidence for an arrest is any, is meaningfully different from Bivens' arrest without probable cause? Both involve a lack of probable cause. Other than the fact that it's worse behavior. Or is that it? If they do something really outrageous, it can't be a Bivens claim, because Bivens was just your usual garden variety arrest without probable cause. Certainly not, Your Honor. In Egbert, the Court doesn't weigh which was the worst excessive for, so that's not the way that the Court analyzed it at all. The Court was looking at whether it was different in a meaningful way. And here, the fabrication of evidence claim, the Second Circuit has actually recognized previously that fabrication of evidence is a separate type of claim. And because it's so cabined, there are only these three. But can you tell me why they both, it's both involve a lack of probable cause, right? They do both. So tell me why is fabricating evidence, like, legally significant in terms of difference, or what the legally significant difference is? Well, certainly, the plaintiff believes it's legally significant, because that's the way he's chosen to characterize the claim as a fabrication of evidence claim. And also, the Second Circuit, even in analyzing 1983 claims, has recognized that fabrication of evidence is a different type of a claim. But you can't, sitting here today, explain to me why it's different? Why it's different from just false arrest? Well, I mean, they both involve lack of probable cause. They do. Why is what's happening here different than what happened in Bivens, except for, as Judge Lynch said, it's worse? Well, it's different for a couple of reasons. It's different for the class of defendants. It's different for the alternative remedial structure that's in place to address deterrence, which was a big factor in Egbert in determining that claims could not lie against Customs and Border Patrol agents. And that alternative remedial structure alone is enough to preclude a Bivens claim. And so we don't, even if we were to say the fabrication of evidence is somehow the same as an arrest without probable cause, those factors... So you're saying that we should be looking at the special factors and not paying so much attention to the new context, right? Because I'm not hearing any particularly thoughtful explanation for why it's a new context. Well, we believe it's a new context, both because of the category of defendants, as you mentioned before, which is the same mandate as in Egbert. And there the Court found a different category of defendants. Wasn't that near the border? It was near the border, but the... The border is special. It is international. That is Homeland Security doing its Homeland Security thing, right? This is Homeland Security doing its regular domestic law enforcement thing, which is different. But what the Court found in Egbert was not so much looking at the conduct, because if the Court had just looked at the conduct, the conduct was so similar to Bivens. The Court even conceded that this is on all fours. It's parallel, that the circumstances are almost exactly the same as Bivens. But that's not the correct question to ask. The correct question to ask is whether there should be any damages remedy against a Border Patrol agent. So the Court looked at that category of defendants, not are they near the border or not near the border. There were some concurrences that discussed whether that was appropriate for the Court to take into account, and the majority said no, that it was not, that that's not what we're looking at. And we're not just looking at are the claims the same? Is the constitutional violation the same? Are the facts the same? That's not even enough, because... If we're not persuaded that this is different than Bivens, if we think this is the same as Bivens, are we authorized to assume that the Supreme Court, as Justice Sotomayor suggests, has de facto overruled Bivens, and therefore we will not follow it? I don't think the Court has to reach that. I think because... What if we decide that we do have to reach it because the case is indistinguishable? Can we declare, as far as we're concerned, the Supreme Court has killed Bivens? If Mr. Norensberg doesn't like it, he can take it to the Supreme Court, and the Supreme Court will tell us if we're wrong or not. I mean, both Justice Sotomayor and Justice Gorsuch were a bit concerned about that being the effect of Egbert, that Bivens... It's very, very difficult post-Egbert to find cases that fit within the Bivens structure, and so that would be the effect of it. It was funny about that. We keep calling it the Bivens structure, and in this case, we are looking at a case that is very like Bivens. It's not only Bivens. The Supreme Court has found other, and continues to regard as sacrosanct, right? If a congressman sexually harasses an aide, that's an old Bivens context because that's one where the Supreme Court, with an as-yet-unoverruled precedent, implied a direct constitutional right of action, right? So I don't know why, in that situation, Bivens would not still be alive. I agree with Your Honor that that path for Bivens remains. And the same is true for the vast number of federal prisoners who might be unhappy with their medical treatment, right? Well, I do think the standard's a little bit different than just being unhappy with their medical treatment. Well, no, but the lawsuits come because they're unhappy. Then we decide whether the conduct of the prison officials met the constitutional standard of deliberate indifference to medical needs. But that's potentially a lot of cases, isn't it? If there was deliberate indifference, an Eighth Amendment violation with respect to medical care in that context in a prison, then those may still be alive under Bivens. And if they changed the name of the Bureau of Prisons and transferred the Bureau of Prisons from the Justice Department to the Department of Homeland Security, we'd have a new context. Well, if there's an alternative remedial scheme that's the same as the one recognized in the Supreme Court, I do think it would be very difficult to find— Well, there are alternative remedial schemes. In fact, before you can present such a claim to the court, you have to exhaust the administrative remedies that exist within the prison. So if there's alternative remedial—alternative remedies within the prison system exist, doesn't that kill the applicability of Bivens, according to the analysis that you've just presented? Well, I don't think it needs to be as broad as that, because in this case, fortunately for the court, it is the exact same alternative remedial structure. It is the same. The regs are the same. Egbert was subject to the same regs as the agents in this case. And the court there found that foreclosed a Bivens remedy. So I understand Your Honor's hypotheticals, but what's before the court is whether in this case these HSI agents who are investigating sex trafficking, abuse of a child, were searching the apartment for the plaintiff's partner who lived there, whether that is the same, that fabrication of evidence claim is the same as what happened in Bivens. Suppose we razored out the fabrication of evidence. I mean, isn't it really the same thing? Because suppose—or I guess the idea is that the fabrication of evidence portion of the claim is actually necessary to the false arrest claim because if the the only evidence was made up, then there would be sufficient evidence for probable cause. The district court found that they were intertwined. And Plaintiff, even on appeal, continues to characterize the case as a fabrication of evidence claim. And in her brief on page 40— I guess you're right. Let me just follow that. That you can't just take that out. That's correct. If you took that out, then there would be probable cause if the plaintiff was not allowed to prove that the probable cause was made up. I think that's true, but, Your Honor, the crux of the claim is the fabrication of evidence leading to arrest, very similar to the Sheik case that I mentioned in Ninth Circuit. It's fabrication of evidence that led to the arrest. And so that's the crux of plaintiff's claim. And fabrication of evidence has never been recognized as a claim under Bivens. It's a different type of a claim. And it's against the same category of defendants that the Supreme Court considered in Egbert itself, the same remedial scheme. I see that my time is up if the Court has no further questions. Yes, I think we're set. Thank you. Thank you very much. Just briefly, Your Honors, a few points I wanted to address. With respect to Judge Lynch, your last series of questions, there was, even if you remove the fabrication of evidence, you have an unlawful entry. There's no exigent circumstances. There's no consent given. You have an unlawful search of the apartment. Didn't they have an arrest warrant for her husband? No. No. No. There's no warrant. They just decided they're going to go there and arrest him, and they arrested him. I see. I mean, they were planning on arresting him. They evidently, I mean, you're not contesting that they had probable cause vis-a-vis the husband. Oh, not at all. They did not have a warrant, and therefore, they were not authorized to enter the apartment. Correct. And search the apartment. And there's a de facto seizure in the apartment where the plaintiff is separated in a separate room, kept there against her will. And this Court has recognized that a de facto seizure in and of itself can constitute a false arrest. So I agree with the Court's overall point that the fabrication is— The Court hasn't had a point. Most of the Court's points may be sounded to Ms. Olds as if they were on your side of the case, but they're not points made by the Court. They are simply questions that we are asking each side. Yes, Your Honor. The last thing I wanted to address, I mean, there seems to have been some discussion about Egbert by my adversary in terms of the suggestion that the Court in Egbert did discuss the new category of defendants. But I would just only point out there's a single sentence in that opinion dealing with new category of defendants. The Court listed as a transitional sentence to get to its substance of analysis. And in that sentence, all it does is simply point to a decision 20 years earlier where it said we recognize it might be barred because there's a new category of defendants, and then it points to a case in which the new category were private corporate defendants in a prison. So this case broke no new ground on that front whatsoever. That's all I wanted to just say in closing. Can I ask a question about the Office of the Inspector General and other accountability offices? Do you have any evidence suggesting that they would not provide an alternative remedy? I can't say there's evidence in the record one way or the other, but I will say that the facts here are very unique. And you have, you know, essentially, you have a mom who's basically listed as a sex offender whose children are taken away for three months, who has no ability to basically do anything about that as a result of this. I can't imagine there's a mechanism in those remedies that would in any way address those deprivations, not even to get into three months in jail and getting your, you know, DNA removed forcefully. I just don't think there's any adequate structure. And the Supreme Court did say the structure has to be sufficient to secure an adequate level of deterrence. And I don't think there's anything we've seen in the record in this case that would support that. All right. All right. Thank you very much. Thank you both for your arguments. We'll take the case under advisement.